UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

TIMOTHY P. JANOVICH,

    Plaintiff.

v.

WELLS FARGO BANK, N.A.

    Defendant.

No. 2:21-cv-00402-TLN-KJN

**ORDER**

This matter is before the Court on Defendant Wells Fargo Bank, N.A.'s ("Defendant") Motion to Dismiss. (ECF No. 5.) Plaintiff Timothy P. Janovich ("Plaintiff") opposed the motion. (ECF No. 6.) Defendant replied. (ECF No. 10.) For the reasons set forth below, the Court GRANTS in part and DENIES in part Defendant's motion. (ECF No. 5.)

///
///
///
///
///
///

**I.    FACTUAL AND PROCEDURAL BACKGROUND**[1]

Plaintiff is a borrower who seeks to obtain damages from Defendant after the alleged wrongful foreclosure of his property located at 2536-2532 Michelle Drive, Sacramento, California (the "Subject Property"). (ECF No. 1 at 17.) In 2006, Plaintiff entered into a loan with World Savings Bank FSB in the amount of $225,000 (the "Senior Loan"), collateralized by the Subject Property.[2] (*Id.* at 18.) Plaintiff also entered into an "Equity Line of Credit" in the amount of $25,000 with World Savings Bank FSB (the "Junior Loan," referred to collectively with the Senior Loan as the "Subject Loan"). (*Id.*) The Subject Loan was subsequently assigned to Wachovia. (*Id.*) Defendant then purchased Wachovia and held the Note and the Subject Loan. (*Id.*) Plaintiff utilized the Subject Property for income as a transitional home for those who recently left mental institutions. (*Id.* at 19.) In 2011, Plaintiff filed a Voluntary Petition under Chapter 13 of Title 11 of the United States Code with the United States Bankruptcy Court for the Eastern District of California (the "2011 Bankruptcy Case"). (*Id.*) Mikalah Liviakis ("Mr. Liviakis") and C. Anthony Hughes ("Mr. Hughes") represented Plaintiff in the 2011 Bankruptcy Case. (*Id.* at 20–21.)

Following the 2011 Bankruptcy Case, Plaintiff scheduled payments to Defendant for $1,174.31 a month for 132 months or 11 years until Plaintiff fully satisfied the claim. (*Id.* at 22.) Plaintiff hired Fiduciary Management Technologies, Inc. ("FMT") to make payments on the Subject Loan, and FMT assigned Lisa M. Sackett, AVP ("Ms. Sackett") to manage Plaintiff's account. (*Id.*) Thereafter, Plaintiff's counsel closed the 2011 Bankruptcy Case because Plaintiff was able to make payments on the Subject Loan. (*Id.* at 23.) Thus, Mr. Liviakis and Mr. Hughes no longer represented Plaintiff. (*Id.* at 24.)

On July 5, 2012, Ms. Sackett, on Plaintiff's behalf, began payments on the Subject Loan. (*Id.* at 24.) Between 2012 and 2018, Defendant increased the amount of the monthly payments

---

[1] The following recitation of facts is taken, sometimes verbatim, from Plaintiff's Complaint. (ECF No. 1 at 16–54.)

[2] The Adjustable Rate Mortgage Note (the "Note") and Deed of Trust was recorded in connection with the Senior Loan. (*Id.*)

2

1    required on the Subject Loan without notifying Plaintiff.  (*Id.* at 25.)  During that time, Defendant
2    failed to regularly cash checks on multiple occasions, making it impossible for Defendant to
3    render true accountings of amounts paid, arrears, and late fees.  (*Id.* at 25–26.)  Defendant did not
4    notify Plaintiff of existing arrears or late payments.  (*Id.* at 26.)  On February 1, 2018, Defendant
5    recorded a Notice of Default reflecting that Plaintiff owed $14,254.54 as of January 30, 2018,
6    although the real amount to cure the loan was less than $4,000.  (*Id.* at 27–28.)  Defendant
7    initially only sent correspondence to Mr. Hughes, who had represented Plaintiff in the 2011
8    Bankruptcy Case, despite knowing the case had closed.  (*Id.* at 28.)
9            On February 9, 2018, Defendant sent Plaintiff the Notice of Default.  (*Id.*)  If Plaintiff had
10   known the real amount was $4,000, he could have easily paid.  (*Id.*)  To resolve this issue,
11   Plaintiff sought out his former bankruptcy attorney Mr. Hughes.  (*Id.* at 29.)  However, Mr.
12   Hughes had sold his practice to Gabriel Liberman ("Mr. Liberman").  (*Id.*)  Mr. Liberman helped
13   Plaintiff attempt to obtain an accounting of payments made to Defendant to no avail.  (*Id.*)  In
14   March 2018, Plaintiff repeatedly requested an accounting, yet Defendant failed to meaningfully
15   respond.  (*Id.* at 29–30.)  On or around March 29, 2018, Plaintiff faxed in a Mortgage Assistance
16   Application.  (*Id.* at 30.)  On April 3, 2018, in response to the application, Defendant sent a
17   request for documents to Mr. Hughes, even though he had not represented Plaintiff for six years.
18   (*Id.*)  Mr. Liberman informed Plaintiff of the correspondence and Plaintiff promptly submitted the
19   requested documents.  (*Id.*)  However, on April 18, 2018, Defendant notified Plaintiff it was still
20   waiting for further documents, including "the 4506T, Real Property Schedule, Rental
21   Agreements, [one] month Rental Income, and Tax Returns."  (*Id.* at 31.)  Plaintiff notified
22   Defendant that he could not submit the tax returns for 2016 and 2017 because they had not yet
23   been filed.  (*Id.*)  Defendant's employee told Plaintiff the tax returns he had previously submitted
24   were sufficient to conduct a review for a foreclosure alternative, including modification.  (*Id.*)
25           On April 27, 2018, Plaintiff again requested an audit of his account.  (*Id.*)  Defendant's
26   employee emailed Plaintiff on May 3, 2018, the day documents were due, requesting further
27   documents without identifying which documents were needed and stated he could not perform an
28   audit in his position.  (*Id.*)  The email did not deny Plaintiff's application and stated "[i]f you're

still interested in the modification, please feel free to contact our office regarding any questions you have pertaining to your mortgage assistance application." (*Id.*) Less than 12 hours after this email, Defendant recorded a Notice of Trustee's Sale. (*Id.* at 31–32.) Defendant notified Plaintiff his loan modification was denied only after receiving Notice of the Trustee's Sale. (*Id.* at 32.) Plaintiff then tried twice to file a Voluntary Petition under Chapter 13 of the Bankruptcy Code on June 7, 2018 and August 23, 2019, but the court dismissed both cases because it was unable to confirm a workable plan and Plaintiff did not file the necessary paperwork. (*Id.*) On October 7, 2019, Defendant sold the Subject Property at a Trustee's Sale. (*Id.*)

Plaintiff filed the instant action with the Sacramento County Superior Court on December 16, 2020, which alleges: (1) unlawful business practices in violation of Cal. Bus. & Prof. Code § 17200 (California's Unfair Competition Law, or the "UCL");[3] (2) wrongful foreclosure; (3) negligent interference with prospective economic advantage; and (4) a violation of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605. (ECF No. 1 at 16–54.) Defendant filed a notice of removal to this Court on March 5, 2021. (*See id.*) Defendant filed the instant motion to dismiss on March 12, 2021. (ECF No. 5.) Plaintiff filed an opposition on April 1, 2021. (ECF No. 6.) Defendant filed a reply on April 8, 2021. (ECF No. 10.)

## II.  STANDARD OF LAW

A motion to dismiss for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure ("Rule") 12(b)(6) tests the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Rule 8(a) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 677–678 (2009). Under notice pleading in federal court, the complaint must "give the defendant fair notice of what the . . . claim is and the

---

[3]  While the heading of Plaintiff's first claim is "Unlawful Business Practices in Violation of Bus. & Prof. Code § 17200, et seq.," Plaintiff alleges within this claim that "Defendant has acted unlawfully, unfairly, and fraudulently." (*See* ECF No. 1 at 33.) Defendant also construes this claim as solely one for unlawful business practices under the UCL (versus unfair or fraudulent business practices under the UCL) in the instant motion, which Plaintiff does not dispute in its opposition. (*See* ECF Nos. 5-2, 6.) Accordingly, the Court will construe Plaintiff's first claim as one alleging unlawful business practices under the UCL.

4

grounds upon which it rests." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007) (internal citation and quotations omitted). "This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002).

On a motion to dismiss, the factual allegations of the complaint must be accepted as true. *Cruz v. Beto*, 405 U.S. 319, 322 (1972). A court must give the plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. *Retail Clerks Int'l Ass'n v. Schermerhorn*, 373 U.S. 746, 753 n.6 (1963). A plaintiff need not allege "'specific facts' beyond those necessary to state his claim and the grounds showing entitlement to relief." *Twombly*, 550 U.S. at 570 (internal citation omitted).

Nevertheless, a court "need not assume the truth of legal conclusions cast in the form of factual allegations." *U.S. ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986). While Rule 8(a) does not require detailed factual allegations, "it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Thus, "[c]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss" for failure to state a claim. *Adams v. Johnson*, 355, F.3d 1179, 1183 (9th Cir. 2004) (citations omitted). Moreover, it is inappropriate to assume the plaintiff "can prove facts that it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

Ultimately, a court may not dismiss a complaint in which the plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 680. While the plausibility requirement is not akin to a probability requirement, it demands more

than "a sheer possibility that a defendant has acted unlawfully." *Id.* at 678. This plausibility inquiry is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Thus, only where a plaintiff fails to "nudge [his or her] claims . . . across the line from conceivable to plausible[,]" is the complaint properly dismissed. *Id.* at 680 (internal quotations omitted).

In ruling on a motion to dismiss, a court may consider only the complaint, any exhibits thereto, and matters which may be judicially noticed pursuant to Federal Rule of Evidence 201. *See Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988); *Isuzu Motors Ltd. v. Consumers Union of U.S., Inc.*, 12 F. Supp. 2d 1035, 1042 (C.D. Cal. 1998); *see also Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010) (the court need not accept as true allegations that contradict matters properly subject to judicial notice).

If a complaint fails to state a plausible claim, "'[a] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts.'" *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc) (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)); *see also Gardner v. Martino*, 563 F.3d 981, 990 (9th Cir. 2009) (finding no abuse of discretion in denying leave to amend when amendment would be futile). Although a district court should freely give leave to amend when justice so requires under Rule 15(a)(2), "the court's discretion to deny such leave is 'particularly broad' where the plaintiff has previously amended its complaint[.]" *Ecological Rights Found. v. Pac. Gas & Elec. Co.*, 713 F.3d 502, 520 (9th Cir. 2013) (quoting *Miller v. Yokohama Tire Corp.*, 358 F.3d 616, 622 (9th Cir. 2004)).

### III. ANALYSIS

Defendant moves to dismiss each claim for failure to state a claim upon which relief may be granted.[4] (*See* ECF Nos. 5, 5-1.) The Court will first address Defendant's Request for Judicial Notice (ECF No. 5-1) and then evaluate each of Plaintiff's claims in turn.

---

[4] On April 1, 2021, Plaintiff requested dismissal of both his fourth claim under RESPA and his request for set aside damages. (ECF No. 7.) Accordingly, the Court DISMISSES Plaintiff's fourth claim and request for set aside damages without prejudice.

1                    A.     Request for Judicial Notice

2          Generally, a district court "may not consider any material beyond the pleadings in a ruling

3  on a 12(b)(6) motion." *Snyder v. HSBC Bank, USA, N.A.*, 913 F. Supp. 2d 755, 768 (C.D. Cal.

4  2012) (citing *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001)). There are two

5  notable exceptions to this rule. *Id.* First, "a court may take judicial notice of "matters of public

6  record." *Id.* "However, when a court takes judicial notice of a matter of public record, such as

7  another court's opinion, it may not do so for the truth of the facts recited therein, but for the

8  existence of the opinion, which is not subject to reasonable dispute over its authenticity." *In re*

9  *W. States Wholesale Nat. Gas Antitrust Litig.*, 633 F. Supp. 2d 1151, 1168–1169 (D. Nev. 2007).

10  Second, "a court may take judicial notice of material which is either submitted as a part of the

11  complaint or necessarily relied upon by the complaint." *Snyder*, 913 F. Supp. 2d at 768.

12          The Court may also take judicial notice of facts that can be "accurately and readily

13  determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid.

14  201(b)(2). The Ninth Circuit has held that court proceedings and determinations are a matter of

15  public record suitable for judicial notice. *Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1198

16  (9th Cir. 1988).

17          Defendant requests the Court take judicial notice of Exhibits A through D. (ECF No. 5-1

18  at 3.) Plaintiff does not oppose Defendant's Request for Judicial Notice. (*See* ECF No. 6.)

19  Exhibits A through D are all "matters of public record" or "proceedings and determinations of the

20  courts."[5] (*See* ECF No. 5-1.) Furthermore, with regard to publicly-recorded documents such as

21  these, the accuracy of such records is not subject to reasonable dispute. *See Armacost v. HSBC*

22  *Bank USA*, No. 10-CV-274-EJL-LMB, 2011 WL 825151, at *1 n.1 (D. Idaho Feb. 9, 2011)

---

[5]     Exhibit A is the "Assignment of Deed of Trust recorded on May 17, 2018, in the Official Records of the County of Sacramento as Document No. 201805170848." (ECF No. 5-1 at 5–6.) Exhibit B is the "Notice of Trustee's Sale, recorded on July 23, 2019, in the Official Records of the County of Sacramento as Document No. 201907230178." (*Id.* at 7–9.) Exhibit C is the "Trustee Deed Upon Sale, recorded on October 7, 2019, in the Official Records of the County of Sacramento as Document No. 201910070820." (*Id.* at 10–12.) Exhibit D is the "Grant Deed recorded on July 10, 2020, in the Official Records of the County of Sacramento as Document No. 20207101634." (*Id.* at 13–16.)

(taking judicial notice of documents filed in a county's public record, including deeds of trust); *Pantoja v. Countywide Home Loans, Inc.*, 640 F. Supp. 2d 1177, 1189 n.12 (N.D. Cal. 2009); *W. Fed. Sav. & Loan Ass'n v. Heflin Corp.*, 797 F. Supp. 790, 792 (N.D. Cal. 1992).  Thus, Defendant's Request for Judicial Notice of Exhibits A through D is GRANTED.

## B. Claim One: Violation of the UCL

Plaintiff alleges Defendant acted unlawfully in a variety of ways, such as: (1) implementing a scheme to prevent accurate accounting; (2) increasing payment amounts without notice; (3) sending notice to Plaintiff's former bankruptcy attorney despite knowing the case was closed; (4) failing to cash checks in a timely manner;  (5) misstating amounts owed on the Notice of Default; (6) making material misrepresentations by stating in a declaration that it had contacted Plaintiff within 30 days of the Notice of Default about foreclosure alternatives; (7) denying Plaintiff's written request for an accounting; and (8) engaging in "dual tracking" (notifying Plaintiff his loan would be reviewed for modification but simultaneously proceeding with foreclosure).  (*See* ECF No. 1 at 33–35.)

Defendant contends Plaintiff lacks standing to bring the claim because he did not successfully assert that he has (1) suffered injury in fact and (2) lost money or property as a result of such unfair competition.  (ECF No. 5-2 at 12–13.)  Further, Defendant argues Plaintiff's UCL claim fails because it is based on the Homeowner Bill of Rights ("HBOR") violations, which do not apply because his property does not qualify as "owner occupied."  (*Id.*)

In opposition, Plaintiff contends he does have standing as he suffered from a wrongful foreclosure which led to the loss of property and income.  (ECF No. 6 at 7.)  Plaintiff argues that while his claims are "not necessarily violative of HBOR's provisions requiring the property be 'owner occupied,'" they are predicated on a violation of public policy "to protect borrowers from predatory lending practices and other violations of HBOR."  (*Id.* at 6.)

In reply, Defendant contends Plaintiff lacks standing because he defaulted on his loan and "therefore failed to satisfy his obligation to affirmatively allege that he was not in default prior to [Defendant] initiating foreclosure proceedings against him and thus cannot draw a direct connection between [Defendant's] alleged wrongdoing and his supposed loss from the

8

foreclosure." (ECF No. 10 at 7–8.) Defendant argues even if Plaintiff's UCL claim is predicated on public policy, "California has made clear that its public policy is limited to protecting homeowners from losing their primary residences rather than extending special protections to commercial ventures like Plaintiff's business." (*Id.* at 7.)

The Court will first address Defendant's argument with respect to standing, and then address Defendant's argument as to whether this claim is adequately pleaded.

      *i.*  *Standing*

The UCL prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200. "[A]n act can be alleged to violate any or all three of the prongs of the UCL — unlawful, unfair, or fraudulent." *Stearns v. Select Comfort Retail Corp.*, 763 F. Supp. 2d 1128, 1149 (N.D. Cal. 2010) (quoting *Berryman v. Merit Prop. Mgmt., Inc.*, 152 Cal. App. 4th 1544, 1554 (2007)). "An 'unlawful' business practice under the UCL is a practice that violates any other law." *Walker v. USAA Cas. Ins. Co.*, 474 F. Supp. 2d 1168, 1171 (E.D. Cal. 2007) (citing *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999)). Standing to bring a UCL claim is limited to specified public officials and a private person "who has suffered injury in fact and has lost money or property as a result of the unfair competition." *Herrejon v. Ocwen Loan Servicing, LLC*, 980 F. Supp. 2d 1186, 1205 (2013) (quoting Cal. Bus. & Prof. Code § 17204). This "requires [plaintiff] to show that she has lost money or property sufficient to constitute an injury in fact under Article III of the Constitution and also requires a causal connection between [defendant's] alleged UCL violation and her injury in fact." *Id.* (alterations in original) (internal quotations and citations omitted).

Here, Plaintiff adequately establishes an injury in fact in the form of losing the Subject Property. Plaintiff alleges he "suffered harm in that he lost title and possession of the Subject Property." (ECF No. 1 at 39.) Further, Plaintiff's allegations of his numerous attempts to avoid default of the loan and foreclosure adequately establishes a causal connection between Defendant's conduct and losing the property. (*See* ECF No. 1 at 30–31.) For example, Plaintiff alleges he contacted Defendant on various occasions "reiterat[ing] the need for an audit of his

9

account, and [to confirm] that all of the information had already been sent in, which it had." (*Id.* at 31.) Such allegations are sufficient to demonstrate Plaintiff has standing to bring a UCL claim for he "suffered an injury in fact and has lost money or property as a result of the unfair competition." Cal. Bus. & Prof. Code § 17200; *see Herrejon*, 980 F. Supp. 2d at 1205 ("Foreclosure of the property fails to support a UCL claim in the absence of allegations of the plaintiffs' performance to avoid default.").

         ii.   *Adequacy of the Claim*

A plaintiff must state a violation of a predicate law to properly allege that the defendant's actions were "unlawful" in violation of the UCL. *Velazquez v. GMAC Mortg. Corp.*, 605 F. Supp. 2d 1049, 1068 (C.D. Cal. 2008). The UCL prohibits "unlawful" practices "forbidden by law, be it civil or criminal, federal, state, or municipal, statutory, regulatory, or court-made." *Saunders v. Super. Ct.*, 27 Cal. App. 4th 832, 838–39 (1999).

Here, Plaintiff alleges his UCL claim is not based on a violation of predicate law but rather a violation of public policy. (ECF No. 6 at 6.) Plaintiff contends "[i]t is public policy to protect borrowers from predatory lending practices and other violations of HBOR" such that "victimizing a borrower" violates the UCL. (*Id.*) Because Plaintiff can adequately establish a claim for wrongful foreclosure, as discussed below, Plaintiff adequately alleges that Defendant engaged in conduct that amounted to an unlawful practice. *See Ryan-Beedy v. Bank of New York Mellon*, 293 F. Supp. 1101, 1115 (E.D. Cal. 2018) (denying the defendants' motion to dismiss a UCL claim because the plaintiff adequately established fraudulent or unfair practices in the form of dual tracking).

Accordingly, Defendant's motion to dismiss Plaintiff's UCL claim is DENIED.

    C.  <u>Claim Two: Wrongful Foreclosure</u>

Plaintiff alleges Defendant caused the wrongful foreclosure on the Subject Property through illegal, fraudulent, and willfully oppressive conduct, which is substantially similar to the misconduct alleged in the first claim. (ECF No. 1 at 36–38.)

Defendant argues the wrongful foreclosure claim fails because Defendant did not conduct the foreclosure, Plaintiff has not alleged tender in support of this claim, the Subject Property was

sold to third-party bona fide purchasers, and Plaintiff failed to join all necessary parties. (ECF No. 5-2 at 14.) The Court will address each argument in turn.

          *i.*      *Whether Defendant Can Be Held Liable and Adequacy of the Claim*

Defendant argues Plaintiff's wrongful foreclosure claim fails because Wilmington was the beneficiary of the Deed of Trust at the time of the trustee's sale, not Defendant. (ECF No. 5-2 at 13–14.) In opposition, Plaintiff argues that courts have held servicers of a loan, such as Defendant, liable for wrongful foreclosure based on their own wrongdoing. (ECF No. 6 at 4.) Plaintiff contends transferring the Deed of Trust to Wilmington has not released Defendant from liability because Defendant continued servicing the loan. (*Id.* at 5.) In reply, Defendant argues *Majd*, cited by Plaintiff, stands for the proposition that because Defendant "played no role in the foreclosure of the subject property" it "cannot be liable" on a wrongful foreclosure claim. (ECF No. 10 at 3–4 (citing *Majd v. Bank of Am., N.A.*, 243 Cal. App. 4th 1293, 1309 (2015)).)

To state a claim for wrongful foreclosure, a plaintiff must allege: "(1) the trustee or mortgagee caused an illegal, fraudulent, or willfully oppressive sale of real property pursuant to a power of sale in a mortgage or deed of trust; (2) the party attacking the sale . . . was prejudiced or harmed; and (3) . . . the trustor or mortgagor tendered the amount of the secured indebtedness or was excused from tendering." *Rockridge Tr. v. Wells Fargo, N.A.*, 985 F. Supp. 2d 1110, 1145 (N.D. Cal. Sept. 25, 2013) (citing *Lona v. Citibank, N.A.*, 202 Cal. App. 4th 89, 104 (2011)).

As an initial matter, Defendant can be held liable as a servicer of a loan. *See Miles v. Deutsche Bank Nat'l Tr. Co.*, 236 Cal. App. 4th 394, 398 (2015) (finding servicer of loan liable for wrongful foreclosure). With respect to the first element, Plaintiff sufficiently alleges that, although not "illegal" under the HBOR with regard to Plaintiff's property as it is not "owner-occupied," Defendant's actions were sufficiently oppressive to form the basis of a wrongful foreclosure claim. *See Ryan-Beedy*, 293 F. Supp. 3d at 1115. With respect to the second element, as a result of the trustee's Sale, Plaintiff alleges he "suffered harm in that he lost title and possession of the Subject Property." (ECF No. 1 at 39.) With respect to the third element, tender is excused as discussed further below.

Accordingly, the Court finds Plaintiff has alleged sufficient facts to demonstrate Defendant can be held liable for wrongful foreclosure.

### ii.     Tender

Defendant contends Plaintiff must tender all amounts due under the loan before he can challenge a foreclosure sale. (ECF No. 5-2 at 14.) Because Plaintiff has not tendered, Defendant argues it was proper to file the Notice of Trustee Sale. (*Id.*) In opposition, Plaintiff contends tender is not required when the foreclosing servicer does not conduct a modification in good faith. (ECF No. 6 at 5 (citing *Majd*, 243 Cal. App. 4th at 1307).) In reply, Defendant argues Plaintiff is not excused from tendering based on his conclusory allegations that Defendant was not acting in good faith. (ECF No. 10 at 5.)

Defendant's argument relating to tender is unpersuasive. Generally, "[a] full tender must be made to set aside a foreclosure sale." *Stebley v. Litton Loan Servicing, LLP*, 202 Cal. App. 4th 522, 526 (2011). "[T]he purpose of the tender rule is to dismiss suits at an early stage, where, despite any irregularities in the lender's foreclosure activities, the borrower will ultimately have to pay the amount due on the loan, but cannot do so." *Majd*, 243 Cal. App. 4th at 1306. The tender rule is an equitable concept, which means it is within the Court's discretion to require tender from a plaintiff. *Pantoja*, 640 F. Supp. 2d at 1184 (citing *In re Worcester*, 811 F.2d 1224, 1231 (9th Cir. 1987)). Courts have held "failure to allege tender is not decisive at [the pleading] stage." *Id.* (quoting *Storm v. Am.'s Servicing Co.*, No. 09cv1206-IEG (JMA), 2009 WL 3756629, at *6 (S.D. Cal. Nov. 6, 2009); *Stokes v. CitiMortgage, Inc.*, No. CV 14-00278 BRO (SHx), 2014 WL 4359193, at *8–9 (C.D. Cal. Sept. 3, 2014).

This Court, too, has excused compliance with the tender requirement in the past when plaintiffs have sought to prevent the sale of their home through injunctive relief, when plaintiffs allege that with a modification they could have cured their deficiency without having to pay the amount due (but defendants foreclosed while plaintiffs' loan modification application was pending), or when plaintiffs have alleged a violation of California's foreclosure statutes. *See Way v. JP Morgan Chase Bank, NA*, No. 2:16-cv-02244-TLN-KJN, 2018 WL 2117630, at *10 (E.D. Cal. May 8, 2018); *Swasey v. Seterus, Inc.*, No. 2:16-cv-01633-TLN-EFB, 2018 WL 3017554, at

\*11 (E.D. Cal. Jun. 14, 2018); *Chin King Wong v. Wells Fargo Bank, N.A.*, 2:18-cv-02811-TLN-CKD (E.D. Cal. Nov. 30, 2020).

Here, Plaintiff is not attempting to set aside the foreclosure sale. Instead, he is arguing the sale should not have occurred because he repeatedly attempted to prevent the foreclosure and Defendant misled him, denying his loan modification application after notifying him of the sale. (ECF No. 1 at 29–32.) Further, Plaintiff attempted to modify his loan, the purpose of which "is to avoid foreclosure despite the borrower being incapable of complying with the terms of the original loan. It would be contradictory to require the borrower to tender the amount due on the original loan in such circumstances." *Ryan-Beedy*, 293 F. Supp. 3d at 1115 (quoting *Majd*, 243 Cal. App. 4th at 1306).

Therefore, the Court concludes tender is not required because Plaintiff sought a loan modification which would not require him to pay according to the original payment schedule. *See Majd*, 243 Cal. App. 4th at 1306 (tender was not required when the plaintiff sought a loan modification because "a loan modification is an alternative to foreclosure that does not require the borrower to pay pursuant to the terms of the original loan"); *see Chin King Wong*, 2020 WL 7024234, at \*6 (excusing tender when the plaintiff sought to prevent sale of home through loan modification to cure deficiency, but the defendant foreclosed while loan modification was pending).

### iii. *Third Party Bona Fide Purchasers and Failure to Join All Necessary Parties*

Defendant further argues Plaintiff did not join all necessary parties to this action in accordance with Rule 19, such as the bona fide purchasers of the Subject Property. (ECF No. 5-2 at 16.) In his Complaint, Plaintiff requested the Court to set aside and void the Notice of Default, Notice of Trustee's Sale, and Trustee's Deed as damages. (ECF No. 1 at 39.) Plaintiff then requested dismissal of the request for set aside damages. (ECF No. 7 at 1.) Thus, because Plaintiff dismissed the request and no longer seeks damages from bona fide purchasers, arguments related to them as additional parties are no longer relevant. (ECF No. 6 at 3–4.)

Based on the foregoing, the Court DENIES Defendant's motion to dismiss the wrongful foreclosure claim.

### D. Claim Three: Negligent Interference with Prospective Economic Advantage

Defendant argues courts have held that a lender does not owe a borrower a duty of care in a loan modification review process. (ECF No. 5-2 at 18.) Defendant contends Plaintiff's application of the *Biakanja* factors, which determine whether a duty of care exists, do not establish Defendant owed Plaintiff a duty. (*Id.* at 19–20 (citing *Weimer v. Nationstar Mortg., LLC*, 47 Cal. App. 5th 341 (2020); *Biakanja v. Irving*, 49 Cal. 2d 647 (1958)).) Defendant also argues the claim fails because Defendant did not conduct the foreclosure sale of the Subject Property. (*Id.* at 20.) In opposition, Plaintiff contends the *Biakanja* factors are fully satisfied. (*Id.* at 8–10.)

"[W]hen a borrower requests a loan modification, a lender owes no tort duty sounding in general negligence principles to process, review and respond carefully and completely to the borrower's application." *Sheen v. Wells Fargo Bank, N.A.*, No. S258019, 2022 WL 664722, at *22 (Cal. Sup. Ct. Mar. 7, 2022) (internal quotations omitted). The economic loss rule provides that "[i]n general, there is no recovery in tort for negligently inflicted 'purely economic losses,' meaning financial harm unaccompanied by physical or property damage." *Id.* at *6 (citing *Southern California Gas Leak Cases*, 7 Cal. 5th 391, 400 (2019)). Tort claims are barred by the economic loss rule "when they arise from — or are not independent of — the parties' underlying contracts." *Id.* at *7. "*Biakanja* does not displace the contractual economic loss rule when that rule squarely applies" and cannot be relied upon to "impose a tort duty on a contracting party to avoid negligently causing monetary harm to another party to that contract." *Id.* at *15–16.

Here, "Plaintiff and [Defendant] did not agree that should [P]laintiff default and attempt to renegotiate his loan by submitting a modification application, [Defendant] would 'process, review and respond carefully and completely to the . . . applications Plaintiff submitted,' and could foreclose only after discharging such obligations." *Id.* at *7 (emphasis omitted) (quoting *Copeland v. Baskin Robbins U.S.A.*, 96 Cal. App. 4th 1251, 1257–59 (2002)). Thus, Plaintiff's

14

claims are not independent from the contract with Defendant "because it is based on an asserted duty that is contrary to the rights and obligations clearly expressed in the loan contract." *Id.* at *8. Because the economic loss rule squarely applies here, the *Biakanja* factors do not apply. Defendant owes Plaintiff no duty to "process, review and respond carefully and completely to the borrower's application." *Id.* at *22.

The Court should grant leave to amend "unless it determines that the pleading could not possibly be cured by the allegation of other facts.'" *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc) (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)).  The law on this issue is clear — Plaintiff is unable to allege Defendant owed him a duty with respect to his loan modification.  Accordingly, the Court GRANTS Defendant's motion to dismiss Plaintiff's negligent interference with prospective economic advantage claim without leave to amend.

### IV.  CONCLUSION

For the foregoing reasons, the Court DENIES in part and GRANTS in part Defendant's Motion to Dismiss (ECF No. 5) as follows:

1. Defendant's Motion to Dismiss Plaintiff's Claim One is DENIED;
2. Defendant's Motion to Dismiss Plaintiff's Claim Two is DENIED; and
3. Defendant's Motion to Dismiss Plaintiff's Claim Three is GRANTED without leave to amend.

Defendant shall file an answer to Plaintiff's Complaint within twenty-one (21) days of the electronic filing date of this Order.

IT IS SO ORDERED.

**DATED:** March 24, 2022

Troy L. Nunley
United States District Judge